**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

Docket Number(s): 23-7276

Caption [use short title]

Motion for: Order Setting Aside the District Court's
September 5, 2023, Order, and Remanding with Directions
to Dismiss the Complaint as Moot for Lack of Standing

Set forth below precise, complete statement of relief sought:

Emergency Motion Seeking an Order Setting Aside
the District Court's September 5, 2023, Order,
and Remanding with Directions to Dismiss the
Complaint as Moot for Lack of Article III Standing

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RARE BREED TRIGGERS, LLC; RARE
BREED FIREARMS, LLC; LAWRENCE
DEMONICO; KEVIN MAXWELL,

Defendants-Appellants.

MOVING PARTY: Defendants-Appellants    OPPOSING PARTY: Plaintiff-Appellee

☐ Plaintiff    ■ Defendant
■ Appellant/Petitioner    ☐ Appellee/Respondent

MOVING ATTORNEY: Gary M. Lawkowski    OPPOSING ATTORNEY: David A. Cooper

[name of attorney, with firm, address, phone number and e-mail]

Dhillon Law Group Inc.    United States Attorney's Office, Eastern District of New York

2121 Eisenhower Avenue, Suite 608, Alexandria, VA 22314    271-A Cadman Plaza East, Brooklyn, NY 11201

703-574-1654, GLawkowski@dhillonlaw.com    718-254-6228, david.cooper4@usdoj.gov

Court- Judge/ Agency appealed from: United States District Judge Nina R. Morrison

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
■ Yes   ☐ No (explain):_____

Opposing counsel's position on motion:
☐ Unopposed   ■ Opposed   ☐ Don't Know
Does opposing counsel intend to file a response:
■ Yes   ☐ No   ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?   ☐ Yes ■ No
Has this relief been previously sought in this court?   ☐ Yes ☒ No

Requested return date and explanation of emergency: 10/22/24
Rare Breed Trigger (RBT) is the exclusive licensee of patents covering virtually all commercialized designs of FRTs.
The limited, non-extendable terms of those patents are being consumed while RBT continues to be enjoined from selling
FRTs, putting RBT at risk of losing its license altogether. Patent infringers, protected from the ATF by the
NAGR v. Garland judgment, are taking what should be RBT's market share, causing irreparable harm to Rare Breed.

Is the oral argument on motion requested?   ■ Yes   ☐ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?   ☐ Yes   ■ No  If yes, enter date:_____

Signature of Moving Attorney:
Gary M. Lawkowski  Digitally signed by Gary M. Lawkowski Date: 2024.09.25 14:58:45 -04'00'   Date: 9/25/2024   Service : ■ Electronic   ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

# 23-7276

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RARE BREED TRIGGERS, LLC; RARE BREED FIREARMS, LLC; LAWRENCE DEMONICO; KEVIN MAXWELL,

*Defendants-Appellants.*

On Appeal from the United States District Court for the Eastern District of New York, Case No. 1:23-cv-00369-NRM-RML

**MEMORANDUM OF LAW PURSUANT TO LOCAL RULE 27.1(a)(3) IN SUPPORT OF APPELLANTS' MOTION TO SET ASIDE THE DISTRICT COURT'S SEPTEMBER 5, 2023, ORDER AND TO REMAND WITH DIRECTIONS TO DISMISS THE COMPLAINT AS MOOT FOR LACK OF STANDING**

GARY M. LAWKOWSKI
DHILLON LAW GROUP INC.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
703-574-1654
glawkowski@dhillonlaw.com

JOSIAH CONTARINO
DHILLON LAW GROUP INC.
50 Park Place, Suite 1105
Newark, NJ 07102
917-423-7221
jcontarino@dhillonlaw.com

*Counsel for Appellants*
**Appellants Request Oral Argument**

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................i

TABLE OF AUTHORITIES ............................................................................ii

INTRODUCTION.............................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...................................3

ARGUMENT ....................................................................................................9

   The Government can no longer claim an injury and, therefore,
   lacks Article III standing.........................................................................9

   I.     Legal standard – Article III standing and mootness.................10

   II.    The Government can no longer claim to be injured because
        its categorization of FRTs as machineguns has been vacated. .13

   III.   The vacatur order applies to this litigation. ............................18

       A.   The July 23, 2024, vacatur order applies because it is
           universal. ....................................................................18

       B.   The July 23, 2024, vacatur order applies because of
           collateral estoppel.........................................................19

CONCLUSION ...............................................................................................25

CERTIFICATE OF SERVICE.....................................................................28

CERTIFICATE OF COMPLIANCE...........................................................29

# TABLE OF AUTHORITIES

## Cases

*Altman v. Bedford Cent. Sch. Dist.*,

   245 F.3d 49 (2d Cir. 2001) ................................................................. 10

*Amcast Indus. Corp. v. Detrex Corp.*,

   45 F.3d 155 (7th Cir. 1995)................................................................. 23

*Bragger v. Trinity Cap. Ent. Corp.*,

   30 F.3d 14 (2d Cir. 1994) ................................................................... 26

*Carter v. HealthPort Techs., LLC*,

   822 F.3d 47 (2d Cir. 2016) ................................................................. 10

*Driftless Area Land Conservancy v. Valcq*,

   16 F. 4th 508 (7th Cir. 2021) ............................................................. 18

*Duke Power Co. v. Greenwood Cnty.*,

   299 U.S. 259 (1936)........................................................................... 26

*E.M. v. New York City Dep't of Educ.*, 758 F.3d 442 (2d Cir. 2014) . 11, 12

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,

   559 F.3d 110 (2d Cir. 2009) ............................................................... 14

*Garland v. Cargill*,

   602 U.S. 406 (2024)......................................................................... 6, 7

*Liberian Cmty. Ass'n of Conn. v. Lamont*,

   970 F.3d 174 (2d Cir. 2020) ............................................................... 11

*Montana v. United States*,

   440 U.S. 147 (1979)............................................................. 20, 23, 24

*Nat'l Ass'n for Gun Rts., Inc. v. Garland,*

  No. 4:23-cv-00830-O, 2024 WL 3517504 (N.D. Tex. July 23, 2024)

  ............................................................................ passim

*Parklane Hosiery Co. v. Shore,*

  439 U.S. 322 (1979)................................................................20

*United States v. Atilla,*

  966 F.3d 118 (2d Cir. 2020) ................................................16

*United States v. Ballistrea,*

  101 F.3d 827 (2d Cir. 1996) ................................................16

*United States v. Blackburn,*

  461 F.3d 259 (2d Cir. 2006) ........................................10, 11

*United States v. Coplan,*

  703 F.3d 46 (2d Cir. 2012) ..................................................17

*United States v. Fuller,*

  332 F.3d 60 (2d Cir. 2003) ....................................................3

*United States v. Int'l Bd. of Teamsters, Chauffers, Warehousemen &*
  *Helpers of Am., AFL-CIO,*

  905 F.2d 610 (2d Cir. 1990) ................................................23

*United States v. Klein,*

  247 F.2d 908 (2d Cir. 1957) ................................................16

*United States v. Mahaffy,*

  499 F. Supp. 2d 291 (E.D.N.Y. 2007) ................................20

*United States v. Munsingwear, Inc.,*

  340 U.S. 36 (1950) ................................................................26

iii

*United States v. Savran,*

   755 F. Supp. 1165 (E.D.N.Y. 1991) ................................................ 13, 17

*United States v. Stauffer Chem. Co.,*

   464 U.S. 165 (1984) ....................................................................... 20

*Virginia House of Delegates v. Bethune-Hill,*

   587 U.S. 658 (2019) ....................................................................... 10

*Warth v. Seldin,* 422 U.S. 490 (1975) ................................................ 11, 12

## Statutes

18 U.S.C. § 1345(a)(1)(A) ................................................................ 15

18 U.S.C. § 371 ............................................................................. 16

5 U.S.C. § 706(2) ........................................................................... 7

## INTRODUCTION

This motion asks the question "what must the Court do when a regulatory interpretation that is a necessary precondition for standing has been vacated by a sister court?"

Plaintiff-Appellee United States ("United States" or "Government") brought this 18 U.S.C. § 1345 ("Section 1345") action alleging that Defendants-Appellants' ("Defendants") were and would continue to be committing fraud by telling consumers that a device known as a "forced reset trigger" ("FRT") is not a "machinegun" under federal law. A necessary precondition for the Government's claim is that FRTs *are* actually "machineguns." After all, there can be no fraud in telling people that something is not a "machinegun" under federal law if that statement is true.

The Government can no longer meet that precondition, even assuming that it ever could have. The United States District Court for the Northern District of Texas recently entered a final judgment vacating the Government's classification of FRTs as "machineguns" as contrary to federal law. *See* Lawkowski Aff., Ex. B, Final Judgment at 1; *see also Nat'l Ass'n for Gun Rts., Inc. v. Garland*, No. 4:23-cv-00830-O, 2024 WL

1

3517504 (N.D. Tex. July 23, 2024) ("*NAGR*"). *NAGR* made clear that its vacatur order applies nationwide, stating "[b]y its very nature, a vacatur is universal in scope because it 'erase[s] [an unlawful regulation] from the books'" and "[e]rasure cannot be limited to only one party when the agency action no longer exists." *NAGR* at *24 (second and third alterations in original) (quoting *United States v. Texas*, 599 U.S. 670, 696 (2023) (Gorsuch, J., concurring in the judgment)). Thus, "[v]acatur of the ATF's unlawful action—classification of FRTs as machineguns—achieves the same effect here as a nationwide injunction." *Id.* Moreover, Defendants are members of the organizational plaintiff group in *NAGR* and thus are parties to that decision. Thus, the *NAGR* order impacts this case in two ways: First, the vacatur order is universal and thus forecloses the Government's theory of this case, and second, the United States is collaterally estopped by the vacatur order.

Now that the Government's classification of FRTs as "machineguns" has been vacated, the alleged injury to the United States—and to Defendants' customers—evaporates. Without an injury, the Government's claims are moot, and this Court—and the district court—lack jurisdiction.

2

When a federal Court of Appeals "ceases to have jurisdiction because of mootness," it "has the 'duty . . . to set aside the decree below and to remand the cause with directions to dismiss.'" *United States v. Fuller*, 332 F.3d 60, 64 (2d Cir. 2003) (quoting *Duke Power Co. v. Greenwood County,* 299 U.S. 259, 267 (1936)).

Accordingly, this Court must set aside the preliminary injunction in this case and remand with directions to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 19, 2023, the Government filed an action in the Eastern District of New York under Section 1345, seeking to enjoin Defendants from continuing activities alleged to be fraudulent. Lawkowski Aff., Ex. A, Prelim. Inj. at 3. The Government alleged that Defendants were engaged in mail fraud and wire fraud by proclaiming to customers their belief that an FRT is not a machinegun while not telling customers that ATF might later disagree. *Id.* at 4. The Government further alleged Defendants obstructed the ATF's lawful function regulating "machineguns" and thus engaged in an unlawful "*Klein* conspiracy." *Id.* at 3. All of these allegations were premised on the assertion that FRTs are illegal "machineguns" under federal law. If they are not, then ATF

3

would lack statutory authority to regulate them under the National Firearms Act, and, far from being a misrepresentation, Defendants' opinion that FRTs were not machineguns was correct.

On August 9, 2023, the National Association for Gun Rights ("NAGR") and others filed a lawsuit under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2), in the Northern District of Texas to adjudicate whether FRTs are machineguns under the statute. Compl. at 1, *NAGR* (N.D. Tex. Aug. 9, 2023), ECF No. 1. Defendants are and have been members of NAGR and were recognized as members of the associational plaintiffs by the Northern District of Texas, which expressly granted them individualized relief. *NAGR* at *10.

On August 30, 2023, the *NAGR* court issued a temporary restraining order against the Government, enjoining it from taking enforcement action against the named individual plaintiffs in that case. Op. & Order at 1, *NAGR* (N.D. Tex. Aug. 30, 2023), 2023 WL 5610293, at *1.

On September 5, 2023, after hearing testimony from expert witnesses for all parties, the district court in the Eastern District of New York granted the Government's motion for a preliminary injunction,

4

Lawkowski Aff., Ex. A, Prelim. Inj. at 128–29, prompting Defendants to file the pending appeal to this Court. The district court noted that the parties' arguments in *NAGR* regarding the application of the Fifth Circuit's ruling in *Cargill* to FRTs in the context of a temporary restraining order "had not yet been fully briefed in the case's highly expedited posture." *Id.* at 61. The district court disagreed that the Fifth Circuit's interpretation of the federal machinegun statute in *Cargill* required the same result when applied to FRTs. *Id.*

On October 7, 2023, after testimony from the same experts, the *NAGR* court issued a preliminary injunction against the Government, enjoining the ATF from:

(1) Initiating or pursuing criminal prosecutions for possession of FRTs;

(2) Initiating or pursuing civil proceedings for possessing, selling, or manufacturing FRTs based on the claim that FRTs are machineguns;

(3) Initiating or pursuing criminal prosecutions for representing to the public of potential buyers and sellers that FRTs are not machineguns;

(4) Initiating or pursuing civil actions for representing to the public of potential buyers and sellers that FRTs are not machineguns;

(5) Sending "Notice Letters" or other similar communications stating that FRTs are machineguns;

(6) Requesting "voluntarily" surrender of FRTs to the government based on the claim that FRTs are machineguns;

(7) Destroying any previously surrendered or seized FRTs; and

(8) Otherwise interfering in the possession, sale, manufacture, transfer, or exchange of FRTs based on the claim that FRTs are machineguns.

Op. & Order at 44, *NAGR* (N.D. Tex. Oct. 7, 2023), 697 F. Supp. 3d 601, 634 (N.D. Tex. 2023).

On November 16, 2023, the *NAGR* court denied a motion to stay the preliminary injunction pending appeal, *see* Lawkowski Aff., Ex. C, Memorandum & Order ("Final Order") at 10–11, and on November 30, 2023, the Fifth Circuit likewise denied the Government's emergency motion to stay, *id.*

On June 14, 2024, while the present appeal was pending, the U.S. Supreme Court issued its ruling on bump stocks in *Garland v. Cargill*, 602 U.S. 406 (2024), interpreting the statutory definition of machinegun under 26 U.S.C. § 5845(b). It said bump stocks do not turn a weapon into a machinegun because a shooter must release and reset the trigger

6

between every shot, and "any subsequent shot fired after the trigger has been released and reset is the result of a separate and distinct 'function of the trigger.'" *Id.* at 415 (quoting 26 U.S.C. § 5845(b)). It explained that a "shooter may fire the weapon again after the trigger has reset, but only by engaging the trigger a second time and thereby initiating a new firing cycle." *Id.* at 421.

On July 23, 2024, following the Supreme Court's *Cargill* decision, the *NAGR* court issued a final order and judgment vacating the ATF's "unlawful" classification of FRTs as machineguns under 26 U.S.C. § 5845(b), declaring "unlawful ATF's determination that FRTs are machineguns," and enjoining the Government from taking action against the parties to the lawsuit based on ATF's expanded definition of "machinegun" that included FRTs.[1] Lawkowski Aff., Ex. C, Final Order at 61–62.[2] The *NAGR* court's vacatur was explicitly "universal" in scope. *Id.* at 52, 60. Although carved out from some of the injunctive relief, the "Rare Breed Parties" were identified as member plaintiffs and

---

[1] The APA gives courts the power to "hold unlawful and set aside agency action[s]." 5 U.S.C. § 706(2).

[2] Entry of Final Judgment was made the following day.

7

beneficiaries of all other relief granted, including protection from criminal charges.[3] *Id.* at 7–8, 21 n.72, 59 n.134, 61–63.

On August 20, 2024, the *NAGR* court reaffirmed its ruling when it denied the Government's Motion to Stay the judgment pending appeal, saying the "Court finds that Defendants, who bear the burden to show a stay pending appeal is warranted, failed to meet their burden here, let alone produce the 'strong' showing required for such 'extraordinary relief' as a stay pending appeal." Order at 8, *NAGR* (N.D. Tex. Aug. 20, 2024), ECF 112 (emphasis omitted) (citing *Plaquemines Parish v. Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023)). The deadline for the Government to take certain affirmative actions (returning unlawfully seized FRTs and mailing corrective notices) was extended—not stayed—by six months. *Id.* at 15.

---

[3] The *NAGR* court defined a limited carve-out of the Defendants in this case ("the Rare Breed Parties") from certain of the injunctive relief granted in the final judgment "to the extent that the permanent injunction conflicts with the E.D.N.Y Lawsuit's civil scope." But the *NAGR* court final order vacated the ATF's classification of forced reset triggers as machineguns, which vacatur it defined to be "universal" in scope, and enjoined the Government from, among other things, bringing criminal charges against the Rare Breed Parties. Lawkowski Aff., Ex. C, Final Order at 52, 60.

Thus, the *NAGR* court's final judgment remains undisturbed. In that regard, the basis of the Government's Complaint here for injunctive relief under Section 1345—the ATF's classification of Defendants' triggers as machineguns—is vacated as if it had never existed.

## ARGUMENT

**The Government can no longer claim an injury and, therefore, lacks Article III standing.**

The Government's alleged injury was that, due to Defendants' fraudulent interference, the Government could not do its job to regulate and confiscate "machineguns." Standing in the shoes of consumers, the Government also alleged injury to consumers. It argued that consumers paid for Defendants' triggers and, because those triggers were "machineguns," they were worthless. But, because of the *NAGR* court's final judgment vacating ATF's machinegun classification, there is no basis for claiming Defendants triggers are "machineguns." Accordingly, the basis for the Government's theories of alleged injury to itself and consumers no longer exists. Without an injury, the Government's claims are moot, depriving it of standing and depriving the district court of jurisdiction to hear the case.

## I. Legal standard – Article III standing and mootness.

Under Article III of the United States Constitution, federal courts are limited to hearing actual "cases and controversies." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016). A plaintiff must have standing under Article III to invoke a federal court's subject-matter jurisdiction. *Id.* As a jurisdictional requirement, standing cannot be waived or forfeited. *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662–63 (2019). "And when standing is questioned by a court or an opposing party, the litigant invoking the court's jurisdiction must do more than simply allege a nonobvious harm." *Id.* at 663 "To cross the standing threshold, the litigant must explain how the elements essential to standing are met." *Id.*

To have standing, a party must, *at all stages of the litigation*, have an actual injury that will be redressed by a favorable judicial decision. *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) (citation omitted). If the "plaintiff loses standing at any time during the pendency of the proceedings in the district court *or in the appellate courts*, the matter becomes moot, and the court loses jurisdiction." *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 69 (2d Cir. 2001) (emphasis added).

10

The case-or-controversy limitation underpins both standing and mootness jurisprudence in the Second Circuit. *Blackburn*, 461 F.3d at 261 (quoting *Friends of the Earth v. Laidlaw Env't Servs.,* 528 U.S. 167, 180 (2000)). When standing is lost, the case is rendered moot, the court's jurisdiction is annulled, and the case must be dismissed. *Id*. Thus, a case becomes moot when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome.

Article III standing requires three elements. "'The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 184 (2d Cir. 2020) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Whether a plaintiff has suffered an injury does not turn on the "'merits of the plaintiff's contention that particular conduct is illegal,'" but rather "depends on 'the nature and source of the claim asserted.'" *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 450 (2d Cir. 2014) (quoting *Warth v. Seldin,* 422 U.S. 490, 500 (1975)).

11

The "source" of the Government's claim is Section 1345. The "nature" of a Section 1345 claim is an allegation of fraud based on actions asserted to be illegal. Here, the foundational basis of the Government's fraud claims (*i.e.*, whether FRTs are machineguns) is not a "contention" being argued, the merits of which are yet to be decided. This foundational issue was already the subject of a prior final adjudication.

When the ATF's categorization of FRTs as machineguns was vacated on July 23, 2024, by the *NAGR* court, the Government was instantaneously stripped of any claim to injury in this lawsuit. Out of respect for its sister court, the *NAGR* court did not directly nullify the injunction against the Defendants. Nevertheless, the effect of the *NAGR* judgment is to deprive the Government of an injury, and without an injury the Government is no longer a person in the position of having "'a right to judicial relief.'" *E.M.*, 758 F.3d at 450 (quoting *Warth*, 422 U.S. at 500).[4]

---

[4] The Second Circuit cases relying on *Warth* to find standing involved *contentions* about the merits of the plaintiffs' claims *yet to be determined*, whereas, here, the legality of FRTs has been finally determined by the *NAGR* court.

II.  **The Government can no longer claim to be injured because its categorization of FRTs as machineguns has been vacated.**

The Government can no longer claim to be injured because its categorization of FRTs as machineguns has been vacated. The Government chose to bring a civil action against Defendants under Section 1345, known as the Anti-fraud Injunction Statute. Injunctive relief is authorized under Section 1345 *only* when the alleged fraudulent scheme is ongoing or when there exists a threat of continued perpetration. *United States v. Savran*, 755 F. Supp. 1165, 1178 (E.D.N.Y. 1991). The statute's equitable remedy "is not available for solely past violations." *Id.*

The alleged "fraud" under Section 1345 was premised on the FRTs Defendants were selling being machineguns under federal law. Indeed, the Government alleged that Defendants were engaged in mail fraud and wire fraud by proclaiming to customers their belief that FRTs are not machineguns without telling customers that ATF might later disagree. Lawkowski Aff., Ex. A, Prelim. Inj. at 4. The Government further alleged Defendants obstructed the ATF's lawful function regulating

13

"machineguns" and thus engaged in an unlawful "*Klein* conspiracy." *Id.* at 3.

Yet the *NAGR* court's final judgment has rendered the controversy moot by definitively resolving that 1) FRTs are not machineguns, 2) Defendants' representation that FRTs are not machineguns was true, and 3) the Government's actions purportedly "determining" otherwise, sending threatening letters, and seizing FRTs were unlawful. Lawkowski Aff., Ex. C, Final Order at 54, 62–63. Thus, the actions in question cannot constitute the alleged mail fraud, wire fraud, or conspiracy to commit fraud. Likewise, Defendants could not engage in a *Klein* conspiracy to defraud or interfere with any *lawful* government agency action.

More specifically, "[a] showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted). The *NAGR* court's vacatur removes the basis for claiming harm to Defendants' customers. Customers cannot be misled by Defendants' opining that FRTs are not machineguns because the ATF classification to the contrary has been invalidated and FRTs have been adjudicated *not* to be machineguns. Thus, no harm will

14

befall Defendants' prospective customers if Defendants are allowed to resume selling FRTs. Indeed, following *NAGR*, forced reset triggers are being legally sold daily by dozens of manufacturers and sellers (patent infringement aside) by third parties not associated with Defendants. Any claim by the Government that it would spend significant resources retrieving "unlawful" FRTs is moot because they have been adjudicated *not* to be unlawful.

The Government's allegations of mail fraud, wire fraud, and conspiracy to commit mail and wire fraud were based on now expressly vacated ATF "determinations" that the *NAGR* court found to have been unlawful. In contrast, it has been adjudicated that it was the ATF who disseminated false information by sending the original cease and desist letter to Defendants and letters to owners of FRTs saying that they were illegal machineguns. *See* Lawkowski Aff., Ex. C, Final Order at 56–57.

Nor is there harm to the Government. Section 1345 permits the Government to bring a civil action in federal court to enjoin ongoing conspiracies to defraud the United States in violation of 18 U.S.C. § 371. *See* 18 U.S.C. § 1345(a)(1)(A). Section 371 prohibits "two or more persons" from "conspir[ing] either to commit any offense against the United

15

States, or to defraud the United States, or any agency thereof in any manner or for any purpose" as long as "one or more of such persons do any act to effect the object of the conspiracy." 18 U.S.C. § 371. The Second Circuit has interpreted this statute as having an "offense" clause—criminalizing conspiracies to "commit any offense against the United States"—as well as a "defraud" clause—criminalizing conspiracies to "defraud the United States." *See, e.g.*, *United States v. Atilla*, 966 F.3d 118, 130 (2d Cir. 2020). A so-called "*Klein*" conspiracy, named after *United States v. Klein*, 247 F.2d 908 (2d Cir. 1957), focuses on the latter portion of Section 371.

A defendant commits a *Klein* conspiracy if he conspires to "interfere with or obstruct one of [the United States'] *lawful* governmental functions by deceit, craft or trickery, or at least by means that are dishonest." *United States v. Ballistrea*, 101 F.3d 827, 831–32 (2d Cir. 1996) (emphasis added) (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)). To prove a *Klein* conspiracy, the Government must demonstrate "(1) that [the] defendant entered into an agreement (2) to obstruct a *lawful* function of the Government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy."

16

*United States v. Coplan*, 703 F.3d 46, 61 (2d Cir. 2012) (emphasis added) (alteration in the original) (quoting *Ballistrea*, 101 F.3d at 832). Again, the *NAGR* court has finally adjudicated as *unlawful* the Government functions with which Defendants are alleged to have interfered.

A Section 1345 action requires there to be a risk of ongoing fraud for jurisdiction. *Savran*, 755 F. Supp. at 1178. ATF had made a "determination" that FRTs were machineguns, which was the basis alleged for all the Section 1345 claims. But that determination has now been vacated. Since it has been adjudicated that the ATF was *not* acting lawfully and ATF did not have the authority to serve a cease-and-desist letter on Defendants or to seize FRTs, Defendants' acts were neither deceitful nor dishonest, and there is no ongoing risk of interfering with or obstructing a *lawful* governmental function "by deceit, craft or trickery, or at least by means that are dishonest."

Accordingly, (1) ATF's actions have been adjudicated to have been "unlawful," so Defendants' actions did not and would not interfere with any *lawful* agency function; and (2) the examination reports on which the Government bases its claims, and on which the ATF sought to "regulate" the FRTs, have been invalidated.

17

The *NAGR* court's vacatur retroactively expunged the ATF's classification of FRTs as machineguns. *See Driftless Area Land Conservancy v. Valcq*, 16 F. 4th 508, 522 (7th Cir. 2021). Unlike an injunction, which merely blocks enforcement, vacatur retroactively undoes or expunges a past state action. *Id*. Vacatur is "[t]he act of annulling or setting aside." *Id*. (quoting *Vacatur, Black's Law Dictionary* (11th ed. 2019)). The *NAGR* court's judgment has rendered the present controversy moot by definitively resolving that Defendants' actions in question were not and are not illegal and, thus, cannot constitute fraud. Indeed, the vacatur eliminated any basis for claiming hardship or harm, irreparable or otherwise, to the Government or ongoing fraud against Defendants' customers.

Accordingly, the Government cannot show that it has ever suffered an injury, let alone an existing one, and, thus, has no standing to maintain this lawsuit.

**III.    The vacatur order applies to this litigation.**

**A.    The July 23, 2024, vacatur order applies because it is universal.**

The *NAGR* court made explicit the universal nature of the vacatur order. Lawkowski Aff., Ex. C, Final Order at 52–53. It noted that "vacatur

18

is universal in scope because it 'erase[s] [an unlawful regulation] from the books.'" *Id.* at 52 (alterations in original) (quoting *United States v. Texas*, 599 U.S. 670, 696 (2023) (Gorsuch, J., concurring in the judgment)). The *NAGR* court rejected the Government's argument that the vacatur should be limited to the *NAGR* plaintiffs. *Id.* at 52–53. The *NAGR* court emphasized that the vacatur "scope logically cannot be limited to specific parties." *Id.* In other words, even if Defendants here were *not* members of the organizational plaintiffs in *NAGR*, the vacatur still would apply to this case: "Erasure cannot be limited to only one party when the agency action no longer exists." *Id.* at 52 (citing *Data Mktg. P'Ship*, 45 F.4th 846, 859 (5th Cir. 2022)). In the end, "[v]acatur of the ATF's unlawful action—classification of FRTs as machineguns—achieves the same effect here as a nationwide injunction." *Id.* at 53. Thus, the *NAGR* court's vacatur applies here because it is "universal."

**B. The July 23, 2024, vacatur order applies because of collateral estoppel.**

Collateral estoppel, or issue preclusion, prevents parties from re-litigating issues that have already been resolved in a prior proceeding. The doctrine applies when: (1) the issue in the subsequent proceeding is the same in substance as the issue decided in the prior proceeding; (2)

the issue was actually litigated in the prior proceeding; (3) the resolution of the issue was necessary to support a valid and final judgment on the merits; and (4) the party against whom preclusion is sought had a full and fair opportunity to litigate the issue in the prior proceeding. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326–27 (1979). Defensive issue preclusion applies against the Government when there is also mutuality of parties. *United States v. Stauffer Chem. Co.,* 464 U.S. 165, 173 (1984); *Montana v. United States*, 440 U.S. 147, 153 (1979). That is, the asserting party and the Government were both parties to or in privity with the prior proceeding. This principle has been recognized in the Second Circuit. *United States v. Mahaffy*, 499 F. Supp. 2d 291, 296 (E.D.N.Y. 2007) ("Through collateral estoppel, 'the Government is precluded from relitigating an issue decided in defendant's favor by a valid final judgment.'" (quoting *United States v. Mespoulede*, 597 F.2d 329, 332 (2d Cir. 1979)).

*(1) Identical issues*. In its judgment, the *NAGR* court ruled that ATF's classification of FRTs as machineguns was unlawful and declared that FRTs are not machineguns under the lawful interpretation of 26 U.S.C. § 5845(b). Lawkowski Aff., Ex. C, Final Order at 38, 41–48, 61–

20

63. That issue, essential to the *NAGR* final judgment, is identical to that necessary for the present action. As the district court below stated, "[t]he Government's motion for a preliminary injunction—indeed, this entire action—depends in part on the threshold question of whether the FRT-15 is, in fact, an illegal machinegun." Lawkowski Aff., Ex. A, Prelim. Inj. at 36. In fact, every claim asserted depends entirely on this threshold question. Although the vacatur applies more broadly, the Rare Breed FRT-15 and the WOT triggers (the exact models the present Defendants sold) were both specifically considered by the *NAGR* court as examples of FRTs. *Id.*

*(2-4) Actually litigated by the Government to, and necessary for, a final judgment.* The issues of whether FRTs constitute an illegal machinegun under federal law and whether the Government's classification of the FRT as a machinegun was valid were fully litigated by the Government in the *NAGR* matter. Indeed, the Government offered its argument on the issue (1) in opposition to the *NAGR* plaintiffs' motion for a temporary restraining order; (2) in opposition to the motion for a preliminary injunction—a preliminary injunction that was issued only after an evidentiary hearing in which the Government presented its

21

expert witness; (3) in support of its motion to the trial court to stay the preliminary injunction; (4) in support of its motion to the appellate court to stay the preliminary injunction; (5) in opposition to the *NAGR* plaintiffs' motion for summary judgment, and in support of the Government's motion for summary judgment; and (6) in support of its motion to the trial court to stay the final judgment. Each time, the Government's arguments were rejected.

The *NAGR* court's July 23, 2024, Final Order and the Final Judgment issued the next day constitute the final court action required for collateral estoppel. Indeed, the July 23 final order granted the *NAGR* plaintiffs' motion for summary judgment while denying the Government's cross-motion for summary judgment. After the controlling issue was thoroughly litigated, the *NAGR* court fully and finally decided the merits of that litigation: that FRTs are not machineguns under federal law.

That the Government is appealing the *NAGR* judgment does not render it non-final for preclusive purposes. "A final judgment by a district court has preclusive effect even though the judgment is pending on appeal." *Amcast Indus. Corp. v. Detrex Corp.,* 45 F.3d 155, 160 (7th Cir.

1995); *accord United States v. Int'l Bd. of Teamsters, Chauffers, Warehousemen & Helpers of Am., AFL-CIO*, 905 F.2d 610, 621 (2d Cir. 1990) (pending appeal "does not deprive a judgment of its preclusive effect" (citation and internal quotation marks omitted)).

By contrast, the district court's order below was a preliminary decision, granting the Government a preliminary injunction after finding the "Government [was] *likely* to succeed on the merits of its contention that the FRT-15 is an illegal machinegun." Lawkowski Aff., Ex. B, Prelim. Inj. at 62 (emphasis added).

*(5) Mutuality of parties.* There is also mutuality of the parties. In *Montana*, 440 U.S. at 156, 161–62, the Court applied collateral estoppel to bar the United States from advancing a federal lawsuit after the Montana Supreme Court had already resolved an issue against the United States's interest in a parallel state court lawsuit that was, "in substance," the same. It reasoned that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Id.* at 153. The

Court so ruled even though the United States controlled—but was not a party to—the state court litigation. *Id.* at 155.

Carved out from some of the injunctive relief to uphold comity principles, the "Rare Breed Parties" (Defendants here) were expressly identified as member plaintiffs and beneficiaries of all other relief granted, including protection from criminal charges, by the *NAGR* court.[5] Lawkowski Aff., Ex. C, Final Order at 7–8 ("Most notably, large Texas entities such as Rare Breed Triggers, LLC, Rare Breed Firearms, LLC, and their respective officers, Lawrence DeMonico and Kevin Maxwell (the 'Rare Breed Parties'), are also members of NAGR."); *id.* at 21 n.72 ("The Complaint is also full of references to the FRT-15 manufactured and sold by Rare Breed Triggers, along with the legal action taken against this commercial member."); *id.* at 59 (finding Rare Breed Parties to be members of "an Organizational Plaintiff"); *id.* at 59, n.134 (noting

---

[5] As mentioned above in footnote 3, the injunction carveout for the Rare Breed Parties did not affect the "universal" vacatur of the ATF's classification of FRTs or the protection the Rare Breed Parties were granted from criminal prosecution, which was expressly premised on the ruling that FRTs are not machineguns. Lawkowski Aff., Ex. C, Final Order at 52, 60.

the Rare Breed Parties include "Lawrence DeMonico and Kevin Maxwell"), *id.* at 61–63.

Defendants were repeatedly referenced in the *NAGR* complaint. Compl. ¶ 55, *NAGR* (N.D. Tex. Aug. 9, 2023), ECF No. 1 ("On August 4, 2023, the DOJ executed a search warrant on the Fargo, North Dakota, office of Rare Breed Triggers, LLC as part of its ongoing campaign against FRT owners, manufacturers, and distributors."); *id.* ¶ 53 ("The ATF has initiated civil proceedings against at least one company and two individuals involved in the manufacture and sale of FRTs. Complaint, *United States of America v. Rare Breed Triggers, LLC*, et al., Case No. 1:23-cv-00369-NRM-RML (E.D.N.Y. Jan. 19, 2023)."); *id.* ¶ 49 ("The ATF has sent cease-and-desist letters to multiple companies involved in the manufacture, marketing, and sale of FRTs, including Rare Breed Triggers . . . ."). Accordingly, the July 23, 2024, *NAGR* court vacatur applies here as well, because of collateral estoppel.

## CONCLUSION

The established—and required—practice for an appellate court when dealing with a civil case that has become moot while on appeal is to vacate the judgment or order below and remand with a direction to

dismiss the case. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40 (1950). Indeed, this is "the duty of the appellate court." *Duke Power*, 299 U.S. at 267. The Second Circuit adheres to this procedure. *Fuller*, 332 F.3d at 64–65 ("Recognizing that when a case becomes moot while on appeal we lack jurisdiction, we have regularly responded to mootness by dismissing the appeal and at the same time following the *Duke Power / Munsingwear* instruction by vacating the judgment and remanding with directions to dismiss the complaint."). "By eliminating the judgment or order that has become moot[,] the rights of all the parties are preserved." *Bragger v. Trinity Cap. Ent. Corp.*, 30 F.3d 14, 17 (2d Cir. 1994) (citing *Munsingwear*, 340 U.S. at 40). "Further, an appellate court may not escape its duty to vacate the judgment appealed from simply because it agrees with the reasoning of the district court." *Id.* (citing *Great Western Sugar Co. v. Nelson*, 442 U.S. 92, 92–93 (1979) (per curiam)).

Accordingly, and for the foregoing reasons, Defendants-Appellants respectfully request that the Court set aside the district court's September 5, 2023, preliminary injunction and remand this matter to the district court with directions to dismiss the Complaint as moot for lack of standing.

Respectfully submitted,

/s/ Gary M. Lawkowski
GARY M. LAWKOWSKI

DHILLON LAW GROUP INC.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
703-574-1654
glawkowski@dhillonlaw.com

JOSIAH CONTARINO
DHILLON LAW GROUP INC.
50 Park Place, Suite 1105
Newark, NJ 07102
917-423-7221
jcontarino@dhillonlaw.com

September 25, 2024          *Counsel for Appellants*

27

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2024, this memorandum of law was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Second Circuit through the Court's CM/ECF system. I certify that all participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Gary Lawkowski*
Gary Lawkowski

## CERTIFICATE OF COMPLIANCE

This memorandum of law complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains fewer than, 5,200 words.

This memorandum of law also complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ Gary Lawkowski
Gary Lawkowski
*Counsel for Appellants*

Dated: September 25, 2024

29