# 23-7276

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RARE BREED TRIGGERS, LLC, RARE BREED
FIREARMS, LLC, LAWRENCE DEMONICO,
KEVIN MAXWELL

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**PLAINTIFF-APPELLEE'S MEMORANDUM IN OPPOSITION TO DEFENDANTS-APPELLANTS' MOTION TO SET ASIDE THE DISTRICT COURT'S SEPTEMBER 5, 2023 ORDER, AND TO REMAND WITH DIRECTIONS TO DISMISS THE COMPLAINT AS MOOT FOR LACK OF STANDING**

BREON PEACE
*United States Attorney*
*Eastern District of New York*
271-A Cadman Plaza East
Brooklyn, New York 11201
(718) 254-6228

VARUNI NELSON
RACHEL G. BALABAN
MICHAEL S. BLUME
DAVID A. COOPER
*Assistant United States Attorneys,*
    *Of Counsel.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ..................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND .............................. 4

    A.    The Eastern District of New York Matter ............................. 4

    B.    The Northern District of Texas Matter .................................. 7

ARGUMENT ............................................................................................ 10

    A.    The Texas Court's Ruling Provides No Basis for Collateral
        Estoppel ............................................................................... 11

    B.    Because the District Court's Decision Here is Based on the
        Governing Statute, the "Vacatur" by the Court in *NAGR*
        Has No Bearing Here ........................................................... 14

    C.    *NAGR* Does Not Address the Misrepresentations
        Defendants Made to Their Customers Or the Steps They
        Took to Interfere With a Government Investigation .............. 15

CONCLUSION ......................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*CBF Indústria De Gusa S/A, et al. v. AMCI Holdings, Inc.*,
850 F.3d 58 (2d Cir. 2017)...............................................................13

*Blonder-Tongue Labs. Inc. v. Univ. of Ill. Found.*,
402 U.S. 313 (1971)..........................................................................11

*Chafin v. Chafin*, 568 U.S. 165 (2013) ...............................................10

*Mollison v. United States*, 481 F.3d 119 (2d Cir. 2007).......................17

*Nat'l Ass'n for Gun Rights, Inc. v. Garland,* ___ F. Supp. 3d ___, 2024 WL
3517504 (N.D. Texas July 23, 2024).................................................2, 9

*PenneCom B.V. v. Merrill Lynch & Co., Inc.*,
372 F.3d 488 (2d Cir. 2004) .............................................................11

*Ramirez v. Collier*, 595 U.S. 411 (2022) ..............................................13

*Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947 (5th Cir. 1997).....................12

*United States v. Powell*, 379 U.S. 48 (1964) ........................................17

*Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138 (2d Cir. 2005)..................... 13, 14

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721 (5th Cir. 1985)........12

## Statutes

18 U.S.C. § 371 ..............................................................................4, 6

18 U.S.C. § 1341 ................................................................................4

18 U.S.C. § 1343 ................................................................................4

18 U.S.C. § 1345 ................................................................................4

18 U.S.C. § 1349 ................................................................................4

26 U.S.C. § 5845(b) ..........................................................................15

**INTRODUCTION**

This memorandum is submitted by the United States in opposition to the motion filed by Defendants-Appellants Rare Breed Triggers, LLC, Rare Breed Firearms, LLC, Lawrence DeMonico, and Kevin Maxwell ("Defendants") on September 25, 2024. Dkt. 65. In an Order entered on September 26, 2024, the motion was referred to the panel that will determine the merits of this appeal. Dkt. 66.

Defendants' motion is premised on a decision by a district court in the Northern District of Texas. *See generally* Dkt. 65.1. That decision does not control the outcome here. The Texas court expressly disclaimed any interference with the progress of this suit. And in any event, nothing about that decision changes the fact that Defendants hid from their customers material information about the FRT-15, a replacement trigger designed for an AR-15–style rifle. Nor does anything in that decision change the fact that Defendants took steps to interfere with the Government's efforts to stop the illegal sale of machinegun conversion devices. The court in Texas simply did not address either of those issues, which (prior to this motion) were the only issues that Defendants put before this Court.

Although the court in Texas held that the FRT-15 is not an illegal machinegun conversion device, that ruling has no bearing on the matter before this Court.[1] First,

---

[1]     The decision from the district court in the Northern District of Texas has been appealed by the Government. *See Nat'l Ass'n for Gun Rights, Inc., et al., v. Garland, et al.*, No. 24-10707 (5th Cir.).

the court in Texas explicitly stated that the injunction that it issued "does not interfere with other courts, such as the Eastern District of New York's civil jurisdiction over the Rare Breed Parties." *Nat'l Ass'n for Gun Rights, Inc., et al., v. Garland, et al.*, No. 23-cv-830 (N.D. Texas) (hereinafter "*NAGR*"), Dkt. 101 at ¶ 5.[2] And that court's express disclaimer of any interference with this suit matched Defendants' own request: in summary judgment briefing, they stated that "the Rare Breed Parties are not asking this Court to interfere with the claims pending before the New York court." *NAGR*, Dkt. 84 at 36. Defendants cannot now demand dismissal based on an order that expressly carves out this case (and other already-pending suits) and that follows their own representation that this matter would not be affected.

Defendants' assertion that the Texas court's "vacatur" of the Bureau of Alcohol, Tobacco, Firearms, and Explosives' "classification" of the FRT-15 controls nationwide is no sounder. The district court here did not rest its conclusion that the FRT-15 is a machinegun on an ATF "classification" or any other administrative action subject to vacatur. It instead held "that the Government has demonstrated that it is highly likely to succeed in proving that the FRT-15 satisfies the *statutory definition* of

---

[2]     Note that the specific language the Texas court used in the *NAGR* Final Judgment is slightly different from the language it used in the *NAGR* Memorandum Opinion & Order. When the Government refers to the Final Judgment herein, it cites to *NAGR* Dkt. 101. When the Government refers to the Memorandum Opinion & Order, it cites to *Nat'l Ass'n for Gun Rights, Inc. v. Garland*, ___ F. Supp. 3d ___, 2024 WL 3517504 at *27 (N.D. Texas July 23, 2024)

a machinegun." Appendix filed by Defendants, Dkts. 36–41 ("A") 147 (emphasis added). The Texas court could not and did not vacate the statute itself.

Defendants' motion is also inconsistent with their opening brief in this appeal, in which they stated that they "are *not* asking this Court to decide which district court is correct about whether the FRT-15 meets the statutory definition of a machine gun." Dkt. 35.1 at 4, n.2 (italics in original). Indeed, Defendants chose not to appeal the district court's ruling that the Government was likely to succeed in demonstrating that the FRT-15 is a machinegun. Having chosen not to appeal the merits of the district court's ruling, defendants cannot now insist—in a motion filed months after the close of briefing—that that this Court defer entirely to a district court in Texas on that very merits issue.

If Defendants now wish to have this Court decide whether the FRT-15 is an illegal machinegun conversion device, notwithstanding their prior representations to the contrary, the Government would welcome the opportunity to brief that question should the Court request supplemental briefing. But Defendants cannot leverage a decision that expressly disclaims an intent to interfere with this case to avoid litigating that question in full, whether before the district court or in this Court.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

### A.    The Eastern District of New York Matter

The United States commenced this action in the Eastern District of New York on January 19, 2023, seeking a temporary restraining order along with preliminary and permanent injunctions under the Anti-Fraud Injunction Act, 18 U.S.C. § 1345. The complaint alleged that Defendants engaged in ongoing mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, a conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349, as well as a conspiracy to defraud the United States in violation of 18 U.S.C. § 371. These allegations concerned Defendants' sale of the FRT-15.[4]

After some months of discovery – and extensive pre-trial litigation – the district court held a preliminary injunction hearing on August 1 and 2, 2023.

On September 5, 2023, the district court issued its decision and granted the United States' request for a preliminary injunction. The court observed that the Government's arguments "depend[] in part on whether the FRT-15 satisfies the statutory definition of a machinegun under federal law." A147. The court thus began

---

[3]    The Government set forth the facts of this matter in the brief it filed with the Court on April 16, 2024. Dkt. 48.1. The Government summarizes those facts here for the Court's convenience.

[4]    The allegations also involved a second machinegun conversion device, the Wide Open Trigger ("WOT"), which was distributed by Defendants. The WOT is a copycat device of the FRT-15.

its legal analysis with an examination of the mechanical operation of the FRT-15 itself. A146–73. It focused on whether the FRT-15 meets the definition of a machinegun in the National Firearms Act, which states that a machinegun is "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." A147–48 (citing 26 U.S.C. § 5845(b)). The court held that the Government "has demonstrated that it is highly likely to succeed in proving that the FRT-15 satisfies the statutory definition of a machinegun," A147, based on "guidance from the Supreme Court, the plain meaning and purpose of the statute, and the interpretive methods applied by other federal appellate courts," A172-73; *see also* A161-73.

In addressing the other aspects of the mail-and-wire-fraud-based claims, the court began by examining whether the United States adduced sufficient evidence to show that Defendants marketed the FRT-15 to their customers by withholding "material information in their possession bearing directly on the truth of their marketing claims about the FRT-15's legality." A179. Specifically, the court found that Defendants "lied to their customers when they told them that the FRT-15 was "absolutely, positively" a legal trigger," A185, given evidence that Defendants knew that similar devices had been regarded as machineguns and that their own experts warned them that their product would be considered illegal. A179-90. Yet, as the court put it, Defendants "concealed that information from their customers." A180. Having

made these findings, the court held that "the Government is likely to succeed on the merits of its claims of mail and wire fraud." A212.

The court next analyzed the United States' allegations that Defendants were conspiring to "defraud the United States" in violation of 18 U.S.C. § 371. A213-31. Relying on longstanding precedent, the court held that such a conspiracy, commonly referred to as a *Klein* conspiracy, is one that is directed towards interfering with a lawful government function by way of deceit. A213-15.

The court considered whether Defendants interfered with ATF's lawful functions of investigating the source of illegal machineguns and confiscating them. A215-17. It found that they did so, and highlighted three aspects of Defendants' conduct that supported this finding. A217-30. First, the court held that Defendants used false labels on packages of trigger devices that they sent through the United States Postal Service. A218-23. Second, the court noted that Defendants employed a "digital shredding policy" and intentionally destroyed records of their sales of FRT-15s. A223-25. Third, the court emphasized an incident involving a company that manufactured FRT-15s for Defendants. A226-30. As part of its ongoing efforts to stop the sale of FRT-15s, the Government had executed a search of that manufacturer and had seized products from one of its facilities. *Id*. The court found that DeMonico interfered with that part of the Government's investigation of the FRT-15. *Id*.

Defendants appealed certain aspects of the district court's decision. They did not, however, challenge the district court's findings with respect to whether the FRT-15 was an illegal machinegun conversion device. Rather, Defendants noted in their opening brief that a court in the Northern District of Texas had held that the FRT-15 was legal in issuing a preliminary injunction. Nonetheless, they went on to state that they "are *not* asking this Court to decide which district court is correct about whether the FRT-15 meets the statutory definition of a machine gun." Dkt. 35.1 at 4 n.2 (italics in original).

## B.      The Northern District of Texas Matter

On August 9, 2023, while this matter was pending before the Eastern District of New York and after the district court had held the preliminary injunction hearing, an organization called the National Association for Gun Rights, along with others, filed suit in the Northern District of Texas asserting that the FRT-15 is not a machinegun. *See NAGR*, Dkt. 1. Although not identified as members of NAGR in the complaint in Texas, Defendants here assert that they are members of NAGR, and thus plaintiffs in that case. Dkt. 64.2 at 4. Defendants are referred to as the "Rare Breed Parties" in *NAGR*. The mail and wire fraud and *Klein* conspiracy issues are not at issue in *NAGR*.

The Texas court initially entered a preliminary injunction. In doing so, it made clear that "to the extent" the Rare Breed Parties "are members of any Organizational

7

Plaintiff" in that case, its injunction did not apply to those parties, citing the need to avoid "trenching on the E.D.N.Y. decision." *NAGR*, Dkt. 53 at 43–44.

The parties in *NAGR* cross moved for summary judgment, and at that point the plaintiffs submitted a declaration claiming that the Rare Breed Parties are NAGR members. One issue before the court in *NAGR* was thus how a decision in that case would – or would not – interact with the suit pending here.

As part of the summary judgment briefing, the plaintiffs in *NAGR* (a group that Defendants now claim to be part of) urged the Texas court to issue a "remedy that provides the Rare Breed Parties a similar level of protection as any other [NAGR] member without intruding on the authority of the New York court," emphasizing that "[t]o be clear, the Rare Breed Parties are not asking this Court to interfere with the claims pending before the New York court." *NAGR*, Dkt. 84 at 30-31. The plaintiffs in Texas thus urged the Texas court to protect the Rare Breed Parties against "criminal prosecution for possession of FRTs," and stated that such relief "would not trench upon the New York court's jurisdiction" over the "civil fraud allegations" at issue in this suit. *Id.*

On July 23, 2024, the court in Texas ruled in favor of the plaintiffs and the next day entered a Final Judgment. *See NAGR*, Dkts. 100–01. The court vacated ATF's classification of the FRT-15 as an illegal machinegun and enjoined the Government from taking criminal or civil enforcement actions against those who made, sold, or

possessed FRT-15s. In its opinion, however, the court in Texas recognized that the Eastern District of New York had already entered an injunction that was, in effect, a civil enforcement action against Defendants. *See Nat'l Ass'n for Gun Rights, Inc. v. Garland*, ___ F. Supp. 3d ___, 2024 WL 3517504 at *27 (N.D. Texas July 23, 2024). The Texas court, emphasizing Fifth Circuit precedent "regarding overlapping decisions from coordinate courts," *id.,* thus reiterated that it should avoid "trenching upon the E.D.N.Y. decision," expressly excluding from its injunctive relief "the Rare Breed Parties . . . to the extent that the permanent injunction conflicts with the E.D.N.Y. lawsuit's civil scope." *Id.* The Texas court thus expressly limited the relief it granted to the Rare Breed Parties as extending only to protection from criminal prosecution, determining that such relief would not "conflict" with the district court's decision here. *Id.* ("recognizing that inclusion of the Rare Breed Parties in the civil aspects of the permanent injunction would likely conflict with the E.D.N.Y. Lawsuit").

Accordingly, and mirroring the Rare Breed Parties' summary judgment briefing, the final judgment in *NAGR* stated:

> This scope of this injunction covers the Individual Plaintiffs and their families, the Organizational Plaintiffs and their members, and the downstream customers of any commercial member of an Organizational Plaintiff *to the extent that it does not interfere with other courts, such as the Eastern District of New York's civil jurisdiction over the Rare Breed Parties* and other pending criminal cases against individuals already subject to prosecution.

*NAGR*, Dkt. 101 ¶ 5 (italics added).

As noted previously, *NAGR* has been appealed to the Fifth Circuit. *See supra* n.1.

## ARGUMENT

Defendants offer two theories for why the Texas court's decision renders this case "moot."[5] First, they contend that the Texas court's "vacatur" of ATF's "classification" of the FRT-15 as a machinegun controls nationwide. Dkt. 65.1 13–19. Second, they argue that the Texas court's decision controls as a matter of collateral estoppel. Dkt. 65.1 19–25. Both theories are wrong. The Texas court was explicit that its ruling did not trench on the authority of the district court here to decide this case; indeed, under the Fifth Circuit precedent the Texas court cited, it could not preclude the district court here from adjudicating the merits. Defendants thus have no viable basis on which to claim collateral estoppel, and their attempt to do so is all the more inappropriate given their own statements that the Texas court's ruling would not determine this suit. And their reference to the Texas court's "vacatur" fundamentally misunderstands the nature of the district court's ruling here, which rests on the application of the statutory definition to the FRT-15. Finally, even if Defendants were

---

[5]     As an initial matter, Defendants are wrong to suggest that the question here is one of mootness. The question whether the FRT-15 is a machinegun under federal law is a merits determination and is not relevant to whether there is an Article III case or controversy. *See Chafin v. Chafin*, 568 U.S. 165, 174–75 (2013) (warning against "confus[ing] mootness with the merits").

correct that the Texas court's ruling had some bearing here, the scope of any effect would be properly determined by the district court in the first instance.

## A. The Texas Court's Ruling Provides No Basis for Collateral Estoppel

Defendants cannot avoid litigating the merits of this suit by invoking collateral estoppel. Collateral estoppel is fundamentally "an equitable doctrine" based on "considerations of fairness in the individual case." *PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 493 (2d Cir. 2004); *accord Blonder-Tongue Labs. Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 334 (1971) ("In the end, decision [on estoppel] will necessarily rest on the trial courts' sense of justice and equity.").

In entering judgment, the Texas court made clear that its ruling should not preclude further litigation in this action. That court emphasized that "respect for coordinate courts . . . guides the scope of the relief awarded here." *NAGR*, 2024 WL 3517504 at *27. It noted that it was "reach[ing] a different conclusion than the E.D.N.Y. decision," and thus "carv[ed] out the Rare Breed Parties" from its injunctive relief "despite membership in" NAGR.[6] *Id.* The Texas court emphasized that it was limiting its relief for the Rare Breed parties to an injunction against criminal

---

[6] In the Fifth Circuit appeal, the Government is contesting whether the Rare Breed Parties were properly shown to be members of NAGR at the time the suit was filed, and thus does not concede that the Rare Breed Parties were properly entitled to any relief or were properly parties to the Texas court's decision. But regardless whether the Rare Breed Parties were actually parties to the Texas court's decision, the Texas court's express disclaimer of any intent to interfere with this case would render application of collateral estoppel inappropriate.

prosecution because "[t]he E.D.N.Y. Lawsuit does *not* include any claims that the Rare Breed Parties engaged in criminal conduct." *Id.* The Texas court emphasized that this approach would "appropriately narrow[]" its relief to avoid "trenching upon the E.D.N.Y. Decision." *Id.* And the Texas court's judgment made clear that its injunctive relief applied only "to the extent that it does not interfere with other courts, such as the Eastern District of New York's civil jurisdiction over the Rare Breed Parties." *NAGR*, Dkt. 101, at 2.

The Texas court also appeared to recognize that under Fifth Circuit precedent it could not properly preclude the Government from litigating the issue here. Fifth Circuit precedent makes clear that "where duplicative issues and parties exist in two cases the court with the first case should resolve the issues between the parties and the second court should defer," a rule "grounded in principles of comity and sound judicial administration." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *accord W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-30 (5th Cir. 1985). The district court acknowledged this general rule in limiting its relief, citing *West Gulf* in explaining that "Fifth Circuit precedent is clear regarding overlapping decisions from coordinate courts." *NAGR*, 2024 WL 3517504 at *27. By taking that course, the Texas court was able to grant relief to the other parties before it—including members of NAGR aside from the Rare Breed Parties—"without

trenching upon the E.D.N.Y. decision," *id.*, or interfering with "the Eastern District of New York's civil jurisdiction over the Rare Breed Parties," *NAGR*, Dkt. 101 at 2.

Defendants' efforts to invoke collateral estoppel are particularly inappropriate given their own statements in the Texas suit. Defendants told the court in Texas that they were "not asking [the Texas] Court to interfere with the claims pending before the New York court," and emphasized that the protection they sought from criminal prosecution "would not trench upon the New York court's jurisdiction." *NAGR*, Dkt. 84 at 31. Having received the protection from criminal prosecution they requested by representing that such relief would not "interfere with the claims pending" here, Defendants cannot now obtain dismissal of this suit on collateral estoppel grounds. *See Ramirez v. Collier*, 595 U.S. 411, 434 (2022) (noting that "a party's inequitable conduct can make equitable relief inappropriate"); *CBF Indústria De Gusa S/A, et al. v. AMCI Holdings, Inc.*, 850 F.3d 58, 78 (2d Cir. 2017) (explaining that equitable principles cannot be used to promote "iniquity"). At a minimum, those considerations underscore the appropriateness of the Texas court's express disclaimer of any intent to interfere with this suit.[7]

---

[7]    If there is any equitable doctrine that should apply here, given Defendants' conduct, it is the doctrine of judicial estoppel. *See, e.g., Uzdavines v. Weeks Marine, Inc*. 418 F.3d 138, 147-48 (2d Cir. 2005) (setting out the standard for judicial estoppel). Defendants took a position in *NAGR* and the court there adopted that position. The court in Texas carved out Defendants from its injunction based in part on Defendants' representation that they did not intend for the court in Texas to extend its authority over this case. Defendants should therefore be estopped from

**B.** **Because the District Court's Decision Here is Based on the Governing Statute, the "Vacatur" by the Court in *NAGR* Has No Bearing Here**

The district court here based its conclusion that the FRT-15 was an illegal machinegun conversion device on the National Firearms Act's definition of "machinegun." It stated expressly that it was assessing "whether the FRT-15 satisfies the statutory definition of a machinegun under federal law." A147.  The court held that the Government "has demonstrated that it is highly likely to succeed in proving that the FRT-15 satisfies the statutory definition of a machinegun." *Id.* And it reached that conclusion based on "guidance from the Supreme Court, the plain meaning and purpose of the statute, and the interpretive methods applied by other federal appellate courts." A172–73.

The district court here thus relied solely on the statutory definition as applied to the FRT-15; it did not rely on, let alone defer to, any ATF rule or regulation addressing the FRT-15. The Texas court was not specific about what ATF action it was "vacating" — it referred vaguely to ATF's "unlawful classification of FRTs as machineguns," *NAGR*, Dkt. 101 at 1 — but the propriety or contours of that order do not change the fact that the district court here reached its own interpretation of the statute as applied

---

taking the opposite position here and arguing that the injunction in *NAGR* applies to this case.

to these devices, without relying on or deferring to any ATF "classification" of the FRT-15. *See, e.g.*, A147–48, A161–73.[8]

The decision in *NAGR* does not and cannot control the meaning of the statute nationwide; only a decision of the Supreme Court can have that effect. Thus, whatever the propriety or practical effect of the Texas court's "vacatur" of ATF's "classification"—points contested in the pending Fifth Circuit appeal—it plainly does not and cannot control whether the statute covers the FRT-15, and cannot dictate how other courts, including the district court and this Court, interpret the statutory language and apply that language to the FRT-15.

## C.    *NAGR* Does Not Address the Misrepresentations Defendants Made to Their Customers Or the Steps They Took to Interfere With a Government Investigation

As discussed above, the district court here properly concluded that the FRT-15 is a machinegun, and thus that "Defendants executed a scheme to induce their customers to purchase a product they knew was or would likely be illegal." A176. But even if the Texas court were correct that the FRT-15 is not a machinegun, that would

---

[8]    ATF has not promulgated any rule or regulation classifying the FRT-15 as a machinegun. ATF experts have issued internal Reports of Technical Examination in connection with the investigation into Defendants' conduct. *See, e.g.*, Supplemental Appendix filed by the Government ("SA") SA369-434. More than one such report has been authored with respect to the FRT-15 and WOT in connection with investigations into Defendants and others. These Reports of Technical Examination conclude that the FRT-15 and WOT are machineguns under the statutory definition contained in 26 U.S.C. § 5845(b). *See, e.g., id.*

not end this case. Defendants' misrepresentations were not limited to whether or not the FRT-15 was legal, but also extended to their hiding critical information about the FRT-15 from their customers. Defendants knew that the ATF had found that a prior iteration of the FRT-15, the AR-1, was illegal, and that the FRT-15 operated in an essentially indistinguishable manner. A179–85. Defendants knew that one of their hired experts warned them that the ATF would find the FRT-15 illegal. A186-87. Defendants knew that another of their experts had concluded that products very much akin to the FRT-15 were illegal. A187–90. Yet, Defendants hid all of that information from their customers. A180, A186–90.

*NAGR* does not address that issue. It did not undermine the findings of the district court here that Defendants lied to their customers, nor that those lies were material to those customers' decisions to purchase the FRT-15. That the court in Texas held that the FRT-15 is legal did not change the Defendants' lies into truths. To the extent that *NAGR's* finding with respect to the legality of the FRT-15 applies here — and it clearly does not — how it applies to the fraud claims is a question that should be left for the district court, in the first instance.

Nor did *NAGR* address whether Defendants interfered with ATF's lawful functions of investigating the source of illegal machineguns and confiscating them. A215–30.

Nothing about *NAGR* calls into question the district court's legal or factual findings that Defendants sought to thwart a government investigation. And thwarting a government investigation is what a *Klein* conspiracy outlaws; it is separate and apart from whether Defendants sold an illegal firearm.

Again, to the extent that *NAGR's* finding with respect to the legality of the FRT-15 applies here – and it clearly does not – how it applies to the *Klein* conspiracy claims is a question that should be left for the district court, in the first instance.[9]

As these points illustrate, even if the Texas court is correct about the FRT-15, that would not end this case. Defendants' request for a direction to dismiss the case is thus improper on any theory.

---

[9]   In addition, Defendants argue that, because a court in Texas has concluded that the FRT-15 is legal, the Government was — and now is — somehow barred from undertaking any investigation that may involve the FRT-15. Defendants' argument puts the cart before the horse; it is based on a premise that the Government can only undertake an investigation *after* it has determined that the subject of the investigation has violated the law. That premise is a misunderstanding of what an investigation is; the purpose of an investigation is to determine *whether* that subject has violated the law. The Government need not establish that a violation of the law has occurred to start or continue an investigation. *See, e.g.*, *Mollison v. United States,* 481 F.3d 119, 123-24 (2d Cir. 2007) (enforcing an Internal Revenue Service summons). It is perfectly proper for the Government to take investigative steps merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. *See, e.g., id*. (citing to and quoting *United States v. Powell*, 379 U.S. 48, 57 (1964)).

## CONCLUSION

The motion should be denied. If the Court wishes to address the status of FRT-15s as machineguns under the National Firearms Act, we respectfully request that the Court order supplemental briefing on this question, as Defendants have now put that issue before the Court.

Dated:      Brooklyn, New York
            October 7, 2024


                                        /s/ _Michael S. Blume_
                                        MICHAEL S. BLUME
                                        Assistant U.S Attorney
                                        Eastern District of New York
                                        (718) 254-6479

18

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————————————

UNITED STATES OF AMERICA v. RARE BREED
TRIGGERS LLC

Docket No. 23-7276

———————————————————

CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. P. 27(d)(2)(A)

I, Michael S. Blume, certify that the Plaintiff-Appellee's Memorandum in

Opposition to Defendants' Motion, dated October 7, 2024, complies with Fed. R. App.

P. 27(d)(2)(A) in that it is less than 5,200 words.

Dated:    Brooklyn, New York
          October 7, 2024


                              MICHAEL S. BLUME
                              Assistant United States Attorney